IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE ALEX-BOUZOUNIS, | : | |
| | : | CIVIL ACTION NO.: |
| Plaintiff, | : | |
| | : | JUDGE |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| CITY OF COLUMBUS, | : | |
| Department of Public Safety, | : | |
| | : | |
| Defendant. | : | **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

**I.  Preliminary Statement**

1. This action seeks back pay, compensatory and liquidated damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of Title VII of the Civil Rights Act of 1967 ("Title VII"), the Ohio Laws Against Discrimination ("OLAD"), and the Equal Pay Act of 1963 ("EPA"), committed by Defendant when it paid Plaintiff Denise Alex-Bouzounis less for equal work performed by one or more male colleagues because of her gender and retaliated against her for opposing a pay disparity she reasonably and sincerely believed was discriminatory.

**II.  Jurisdiction and Venue**

2. This action brings sex discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e *et seq*.; OLAD, R.C. Ch. 4112; and the EPA, 29 U.S.C. § 206(d), *et seq.*, as amended.

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental jurisdiction over action under R.C. 4112.99 with common nucleus of operative fact).

4. Declaratory, injunctive, and equitable relief; back pay and compensatory and liquidated damages are sought pursuant to 28 U.S.C. §§ 2201; 2202; Title VII, the EPA, OLAD, and the common law of the State of Ohio.

5. Costs and attorney fees may be awarded pursuant to Title VII, the EPA, OLAD, and the common law of the State of Ohio.

6. Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202; and the common law of the State of Ohio.

7. On October 15, 2024, Plaintiff requested a Right To Sue notice from the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission (OCRC), and jurisdiction over her Title VII and OLAD claim should, therefore, be held in abeyance pending receipt of each Right to Sue notice, which she will file within 90 days of receipt.

8. Venue lies in this forum because Plaintiff was employed by Defendant in Franklin County, Ohio within the Southern District of Ohio, and the events giving rise to her claim occurred there.

**III.** **Parties**

9. Plaintiff Denise Alex-Bouzounis is a female adult residing in Dublin, Ohio who was employed by Defendant from 2014 until she resigned in November 2022 and became a public information officer for the City of New Albany, Ohio; before joining Defendant she was a multimedia journalist, backup anchor, and lead crime reporter at WCMH NBC4 in Columbus, an anchor, reporter, and multimedia journalist at the Ohio News Network, and an anchor, reporter and producer at WTAP-TV in Parkersburg, West Virginia, and had earned a bachelor's degree in broadcast journalism and communication from The Ohio State University.

10. Defendant City of Columbus, Department of Public Safety, is a political subdivision of the State of Ohio and operates the Columbus Division of Police ("CDP"), and, at all times relevant to this action, was a covered employer within the meaning of Title VII, OLAD, and the EPA.

**IV.    Facts**

11. In 2014, Plaintiff was hired by Defendant as a Public Relations Specialist II and conducted public relations work for the CDP.

12. Plaintiff received excellent performance reviews.

13. In 2021, Defendant posted a second Public Relations II position for the CDP and included a salary range that topped out well above Plaintiff's existing salary.

14. Under the posting policy Defendant followed, a posting was done to invite applications, and the salary range did not depend on the characteristics, including experience or quality, of an individual Defendant expected would apply beyond the minimum qualifications of a bachelor's degree and three years in media, journalism, marketing or public relations.

15. At the time of the posting, Plaintiff had not received a raise in a considerable period of time, and she decided to apply for the newly posted position.

16. Defendant did not respond to Plaintiff's application with a call back, email, or interview.

17. The posting did not disqualify an applicant who was already employed in a Public Relations II position from applying.

18. Plaintiff's experience, job evaluations, knowledge, and past competent performance rendered her nearly perfectly qualified for the new Public Relations II position.

19. Defendant was unable to fill the position in 2021.

20. In March 2022, Defendant again posted a Public Relations II position for applications, and the 2022 posting included a salary range that topped out well above Plaintiff's existing salary.

21. Plaintiff applied for the 2022 position.

22. Defendant did not respond to Plaintiff's 2022 application with a call back, email, or interview.

23. Plaintiff does not recall the posting disqualifying an applicant who was already employed in a Public Relations II position from applying.

24. Plaintiff was not aware of any formal Defendant policy or regulation that precluded an applicant who was already employed in a Public Relations II position from applying for a posted Public Relations II position.

25. Defendant never told Plaintiff that it had a formal policy prohibiting an applicant who was already employed in a position from applying for a posted position with different terms or conditions.

26. Plaintiff believed that Defendant's posting of a position was meant to communicate to both internal and external candidates the opportunity to apply for that position.

27. The 2022 posting did not exclude internal candidates from applying.

28. When Plaintiff observed that the 2022 posted Public Relations II position had a higher salary than she had been earning, she assumed that it involved qualification and duties sufficiently different to justify that higher salary.

29. Plaintiff reviewed the qualifications and duties of the 2022 posted Public Relations II position and realized that they were virtually identical to her Public Relations II position.

30. Plaintiff's experience, job evaluation, knowledge, and past competent performance rendered her nearly perfectly qualified for the posted 2022 Public Relations II position.

31. As of March 2022, Plaintiff was making $40.82 per hour.

32. In May 2022, Defendant offered the Public Relations II position to a male candidate with a television journalism background at $45.19 per hour, but he rejected the offer.

33. Later in May 2022, Defendant offered the Public Relations II position to a male candidate at $43.75 per hour, and he accepted the position.

34. The male candidate who accepted the position was considerably younger than Plaintiff and had most recently been working as a producer at a local television station.

35. After the male candidate accepted the position, Plaintiff was required to train him in the position.

36. It was apparent to Plaintiff when she trained him that she had superior qualifications for the 2022 posted Public Relations II position.

37. Both the 2021 and 2022 posted Public Relations II positions required substantially equal work in terms of skill, effort, and responsibility, under similar working conditions and in the same workplace, as Plaintiff's Public Relations II position.

38. The 2021 and 2022 postings for Public Relations II positions were similar to the 2014 posting for the Public Relations II position.

39. The differences between the 2014 posting for the Public Relations II position and the 2021 and 2022 positions were insignificant in terms of the qualifications, skill, effort, and responsibility, working conditions, and workplace required for the position.

40. In the late summer of 2022, Plaintiff learned that the male individual that was hired for the position was being paid significantly more than she was.

41. On September 13, 2022, Plaintiff sent an email to Jennifer Dieringer, a human resources analyst who worked for Defendant, requesting that her salary be reevaluated.

42. Defendant had the discretion whether to reevaluate an employee's salary, and one reason for exercising that discretion was that the salary might have reflected a conscious or subconscious discriminatory decision or an unfair amount.

43. Plaintiff never received a reevaluation of her pay.

44. Total compensation for the Public Relations II position included employment benefits that built on the salary an employee in that position was being paid.

45. Subsequently, Plaintiff made numerous complaints to her superiors, including written complaints, about her belief that she was being paid differently because of her gender.

46. Following Plaintiff's complaints, Plaintiff was moved from her office at Defendant's Morse Road Facility and moved to mail police headquarters in downtown Columbus where she was placed in a cubicle.

47. At the downtown officer, Plaintiff was repeatedly berated by a Deputy Chief in front of the male employee who was being paid more than her to perform the same work.

48. Defendant knew that Plaintiff resented the pay disparity, perceiving it to be sex discriminatory, and suspected that she would continue to pursue her perception, whether internally or by filing a charge of discrimination.

49. In November 2022, Plaintiff left her employment with Defendant.

50. On October 22, 2022, Plaintiff timely dual-filed a Complaint with the EEOC and OCRC alleging gender discrimination in pay and retaliation.

51. On May 21, 2024, the EEOC issued a determination that information and evidence gathered established that Defendant subjected Plaintiff to disparate treatment, including disparate pay, because of her sex and the reasons asserted for the actions taken were pretextual.

52. The EEOC concluded that there was reasonable cause to believe that Defendant discriminated against the Charging Party because of her sex (female) from at least in or around November 2021, and continuing until in or around November 2022, in violation of Title VII and the EPA.

53. As a proximate result of her discriminatory pay and retaliation for her responsible efforts to oppose practices she sincerely and reasonably believed violated her rights, Plaintiff suffered emotional distress, frustration, and humiliation.

54. Defendant acted willfully, in reckless disregard of Plaintiff's rights, and lacked a good-faith belief that one or more male Public Relations II employees should be paid more than Plaintiff was.

55. On October 17, 2024, Counsel representing Defendant agreed to the tolling of the statute of limitations from October 15, 2024 through November 15, 2024.

## V. Causes of Action

### A. First Count: Sex Discriminatory Pay

56. Paragraphs 1 through 55 are incorporated herein as if fully set forth.

57. By paying Plaintiff, a female, less than what Defendant paid a male employee for equal work requiring equal skill, effort, and responsibility because of her gender, Defendant violated Title VII, the Equal Pay Act, and OLAD.

### B. Second Count: Retaliation in Violation of Title VII and OLAD

58. Paragraphs 1 through 55 are incorporated herein as if fully set forth.

59. By taking actions against Plaintiff that would dissuade a reasonable employee from opposing sex discrimination even though she sincerely and reasonably believed that she had been discriminated against and responsibly opposed that discrimination, Defendant violated Title VII and OLAD.

### C. Third Count: Retaliation in Violation of the Equal Pay Act of 1963

60. Paragraphs 1 through 55 are incorporated herein as if fully set forth.

61. By taking actions against Plaintiff that would dissuade a reasonable employee from opposing sex discrimination even though she sincerely and reasonably believed that she had been discriminated against and responsibly opposed that discrimination by communicating her opposition to her employer in anticipation of vindicating her statutory rights either internally or through filing a charge or commencing a lawsuit, Defendant violated the Equal Pay Act, 29 U.S.C. § 215(a)(3).

## VI. Prayer for Relief

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. a declaration that Defendant has violated Title VII, the Equal Pay Act, and/or OLAD;

B. wages, salary, employment benefits, and other compensation denied or lost to her because of Defendant's violation;

C. liquidated damages in an amount twice the amount of wages, salary, employment benefits, and other compensation denied or lost to her because of Defendant's violation;

D. compensatory damages for emotional distress, frustration, and humiliation;

E. prejudgment and post-judgment interest:

F. costs and attorneys' fees; and

G.      such other relief as the Court deems fair and equitable.

Respectfully submitted,

By: */s/ Edward R. Forman*
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
John S. Marshall (0015160)

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (614) 463-9780

(*jmarshall@marshallforman.com*)
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Helen M. Robinson (0097070)
(*hrobinson@marshallforman.com*)
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780


Edward W. Hastie (0079438)
HASTIE LAW OFFICES, LLC
*(ed@hastielegal.com)*
1258 Grandview Ave., Suite B
Columbus, Ohio 43212
(614) 488-2800
Fax (614) 488-2882

Counsel for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a trial by a jury of eight (8) persons on all issues and claims in

this matter so triable.

>*/s/ Edward R/ Forman*
>Edward R. Forman